UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CHRISTOPHER MORISETTE, | CASE NO. 2:23-cv-01519-TL-GJL |
| Petitioner, | REPORT AND RECOMMENDATION |
| v. | Noting Date: April 12, 2024 |
| ROB JACKSON, | |
| Respondent. | |

The District Court has referred this action to United States Magistrate Judge Grady J. Leupold. Petitioner Christopher Morisette, proceeding *pro se*, has filed a federal Petition for writ of habeas corpus ("Petition") pursuant to 28 U.S.C. § 2254, seeking relief from his state court convictions and sentence. *See* Dkt. 8. Petitioner has raised four grounds for relief.

After considering the record, the Court concludes Petitioner failed to properly exhaust his state court remedies as to three grounds raised in the Petition. Because Petitioner is now barred from pursuing state court remedies, Petitioner has procedurally defaulted on those three grounds raised in the Petition. Further, the Court finds the state courts' adjudication of the one exhausted ground was not contrary to, or an unreasonable application of, clearly established federal law.

Therefore, the Court recommends the Petition be **DENIED** on all grounds and a certificate of appealability not be issued.

## I.    BACKGROUND

A.    Factual Background

On April 7, 2021, in the Superior Court of Washington for King County ("trial court"), a jury found Petitioner guilty of one count of assault in the first degree and three counts of assault in the second degree. Dkt. 14 at 2, Ex. 1. The Court of Appeals of the State of Washington ("state court of appeals") summarized the facts of Petitioner's case as follows:

> On July 9, 2019, Andrew Marquis passed by and later identified Christopher Morisette who was holding a four-inch knife in downtown Seattle. Morisette held the knife with the blade faced toward himself doing a "light like tapping motion, just kind of rhythmically...." Around the same time, bystander Richard Johnson approached and warned Morisette to put the knife away and said that whatever he was thinking of doing was not worth it. Morisette turned and asked, "You want some of this?" and then walked toward Johnson. Johnson again told Morisette to put down the knife. Morisette pointed the knife at himself and said, "I want to die."
>
> Around the same time, a car pulled out of a nearby parking garage. Morisette banged on the hood of the car, and he started swinging his knife around. Marquis then called 911. At that point, Biruk Haile was walking by while looking at his phone when Morisette cut Haile's arm. Before Haile realized what was happening, Haile dropped his phone. As he attempted to pick up his phone, he noticed blood on his hand and saw Morisette swing the knife at him again. Haile grabbed an orange traffic cone to block any further advances by Morisette.
>
> Morisette then walked toward a nearby entrance of the Nordstrom building when security officer Gregory Grady came outside. Grady had heard someone yelling on the street, "I've been stabbed. Somebody call the police, I've been stabbed." Morisette lunged at Grady and took a swipe at him, but Grady moved out of the way.
>
> Morisette continued walking up the sidewalk. Terry Sheets, who was working as a Nordstrom valet attendant, stood on the sidewalk near the store entrance. He heard some commotion, and as he turned, Morisette stabbed him in the neck.
>
> Morisette then walked across the street, stabbed the back of another person, Robert Desjarlais, and then walked away. As he walked past a delivery truck, he

threw the knife inside. He then took off his clothes and sprinted toward the freeway before police made contact. Morisette immediately complied with police orders and was arrested.

The State charged Morisette with four counts: (1) assault in the first degree of Terry Sheets, (2) assault in the second degree of Robert Desjarlais, (3) assault in the second degree of Biruk Haile, and (4) assault in the second degree of Gregory Grady.

Before trial, at defense counsel's request, the court ordered an evaluation of Morisette to determine his competency to stand trial. Dr. Cynthia Mundt, a forensic psychologist, conducted the evaluation. She was unable to complete the interview because Morisette would speak very low, then eat pieces of paper, and then responded loudly in a manner that suggested he was attempting to speak in a foreign language and not respond to questions in English. Mundt reviewed his relevant clinical history, including his history of inpatient and outpatient assessments and treatment dating back to at least 2009. This review included his most recent evaluation from December 2018. Mundt also reviewed King County Correctional Facility mental health records. Records revealed disruptive behavior such as throwing feces or his food tray, spitting, flooding, banging on doors, and not following directions. Mundt reported that at times, Morisette "informed jail staff that he would continue engaging in the above behaviors until his requests or demands were met, such as a desire to move to psychiatric housing."

Morisette had been previously diagnosed with unspecified schizophrenia spectrum and other "psychotic disorder," unspecified substance abuse disorder, personality disorder with antisocial traits, bipolar disorder, autism spectrum disorder, and possible ADHD. He also had a history of attempting to feign symptoms to manipulate housing in jail and to influence the outcome of forensic mental health evaluations. In 2018, forensic evaluator Dr. George Nelson concurred with clinical opinions offered by prior evaluators in general but concluded that Morisette's presentation was suggestive of efforts to exaggerate his symptoms and that he had the capacity to understand the proceedings and assist in his defense. Mundt reported that Morisette's presentation during her attempted interview was an attempt to do the same. Mundt reported,

> It is my opinion that Mr. Morisette did not present during my attempt to interview him with genuine symptoms of a mental illness. A review of recent collateral records from the jail suggests that he has been compliant with medications for an extended period of time and has not presented with objective evidence of hallucinations, delusions, or bizarre or unusual beliefs. He has consistently presented with evidence of organized and goal[-]directed thought processes, as demonstrated by his interactions with jail staff and his written requests. Mr. Morisette has a history of interaction with the legal system and therefore has some familiarity with typical court

REPORT AND RECOMMENDATION - 3

proceedings. He has also been assessed on multiple prior occasions and has been opined on more than one occasion to have sufficient factual knowledge to demonstrate a capacity to understand his charges and proceedings.

Dr. Mundt's diagnostic impressions of Morisette were malingering; unspecified schizophrenia and other psychotic disorders, by history; substance use disorders (methamphetamine and ecstasy), by history; rule-out, unspecified personality disorder, with mixed traits, by history. She concluded there was currently insufficient evidence available to suggest that, due to symptoms of a mental illness, Morisette lacked the capacity to understand the nature of the proceedings against him or lacked the capacity to assist in his own defense. The trial court entered an order finding Morisette competent to stand trial.

Voir dire began on March 23, 2021. Morisette asked if he could dismiss himself if he had no say in which jurors would be showing up. The court responded that if he was making a knowing and thoughtful decision to not observe the proceedings, he has that right. The court took a recess so that he could speak with counsel about that decision. When trial resumed, a transport officer informed the court that he was not comfortable bringing Morisette back to court based on sanitary conditions. Later, his counsel testified through a declaration that Morisette had put his head in the toilet. Trial concluded for the day, and jury selection continued the next day with Morisette present. Morisette's counsel explained that because of his client's psychotic disorders and Asperger's disorder, it would be helpful if the court could take additional scheduled breaks. The court granted that request.

On March 29, Morisette refused to be transported. The court signed an order allowing use of reasonable force, if necessary, to transport him. The transport officer stated that jail staff was able to transport him without using reasonable force but requested that he remain in restraints because of his "erratic behavior." Defense counsel objected. When the court inquired, the jail staff explained it was a concern of more "erratic decision-making today" than erratic behavior. Jail staff noted that Morisette was "very polite, but he was adamant that he was not going to court," but then they were able to convince him to go to court without using force.

During voir dire, Morisette interrupted the court saying he had the right to speak, told a juror "you do take things too far," discussed the abuse of the justice system, and told his attorney he was not helping his case "by any means." When a juror told the court they thought the case was a "slam dunk," Morisette started singing loudly, making it hard to hear. Morisette made a motion to represent himself for many reasons including that he had not been allowed to go to Western State Hospital, but the court denied the request.

When the State was in the middle of its opening statement, Morisette interrupted with "I don't think he has his facts straight." The court recessed and told Morisette that if he had another outburst, the court would have him removed from

the courtroom or gagged. When trial resumed, he did not interrupt for the rest of the State's opening statement.

Morisette's courtroom behavior during a witness's testimony caused the court to have to take a recess. The court again warned Morisette that if he could not stop his outbursts, the court would have him removed.

On April 6, while Sheets testified about being stabbed in the neck, Morisette mimicked a stabbing motion with a ballpoint pen into his own neck. Morisette also clenched his hand around a pen and thrust his hand toward his counsel but stopped short of striking her. He made a similar motion with a closed fist shortly after. Additionally, at some point that morning, Morisette walked toward a jail officer and expressed that he wanted to leave but sat down at the direction of counsel. The parties were not aware if the jurors had seen these incidents because it was during witness testimony, and Morisette was not in the jurors' line of sight to the witness stand. Defense counsel requested a mistrial, and the court denied that request, reasoning that any irregularity was caused by Morisette.

On April 7, the court addressed whether Morisette's conduct raised security issues and a need for restraints. Morisette told the court that restraints were not necessary and that he understood he was being recorded and in a movie—but whoever the actor was, Chris Morisette is not him. He stated,

> I'm not claiming to be him, nor do I have any identification on me or paperwork to match this name or any of the numbers on it, sir, that I'm redacted discovery short of even providing anything of a competent trial, and I – I am sorry about whoever comes in or whatever this stuff is, I do not claim to be involved, and that is all.

When Morisette interrupted the court's discussion regarding restraints, the court told Morisette not to make any more outbursts. The court once again warned Morisette that it could remove him. Morisette responded, "Then remove me." Defense asked for a recess to allow them to talk to Morisette outside the courtroom. The court recessed, and when it resumed, counsel returned without Morisette.

Defense counsel then requested another competency evaluation "in an abundance of caution." Counsel stated, "I think we were comfortable proceeding through trial, but I think the stress of trial has been overwhelming for him, and I think that's been the change that we've seen in the last 24 hours or so." The court denied the motion, stating,

> It has been my observation that most of Mr. Morisette's outbursts have been rational, at least within the realm of rationality as far as I can tell. Some of the things he said in court this morning were nonsensical – that's true – but I can't tell whether he's saying that as part of a disruption or whether he's truly having an episode of

REPORT AND RECOMMENDATION - 5

some sort that's beyond my competence to evaluate. What I do know is Mr. Morisette has been previously evaluated by those who are trained to evaluate such matters and he's been found competent and he has for the most part been able to participate in this trial when he has chosen to do so although he has from time to time chosen not to participate and has frequently put his head down on the table at counsel table even when he's been present in court.

The court then asked counsel to comment on Morisette's lack of presence in the courtroom. Counsel responded, "I think he understands he has the right to be here and we're comfortable relaying to the Court that he's waiving that right." Counsel further told the court that Morisette was not explicitly made aware he had the option of observing the trial via video in another courtroom. The court directed counsel to make Morisette aware of this option, which counsel then did, and later conveyed that Morisette declined and asked to be moved back to jail. The court inquired if Morisette's counsel was satisfied that Morisette's decision to no longer be present in the courtroom were "knowing, intelligent, and voluntary," and counsel responded "yes." Counsel stated that he still had concerns about "the overall issue" as to the motion for evaluation. All that remained after Morisette waived his presence was closing arguments. When the jury reached its verdict, Morisette still waived his presence. The court asked defense counsel if she had consulted with her client regarding his attendance. Counsel answered that she had and that she believed "he's decided to not attend voluntarily and intelligently." The jury convicted Morisette on all counts.

On April 21, after trial concluded, defense counsel filed a motion requesting a competency evaluation. In the defense declaration supporting the motion, counsel listed the various times Morisette disrupted trial, but also disruptive observations made after closing arguments. Counsel wrote that when she went to the jail after closing arguments to discuss the taking of the verdict, the jail staff informed her that Morisette had smeared feces in his cell and that counsel had to visit him at the cuff port of his cell. Counsel also wrote that she had met with her client two more times and that his appearance and demeanor had not noticeably changed.

The court granted the motion requesting a competency evaluation. Dr. Mundt completed the evaluation. She attempted twice to interview Morisette, but he refused to participate. Accordingly, she based her opinion on collateral information. At the recommendation of defense counsel, Mundt reviewed the April 7 audio recordings of the trial. Mundt also reviewed Morisette's jail mental health records from September 26, 2020[,] through April 28, 2021. Mundt explained,

> Since the time of my prior evaluation, Mr. Morisette has remained compliant with medication and has had frequent contact with and observation by jail mental health staff. There is no indication in records of any decreases in his functional capacities at any time during the last eight months or in recent history. He has increasingly

presented in multiple contexts in recent history of increasingly bizarre and unpredictable behavior. This behavior is not consistent with symptoms of psychosis and as noted above is better attributed to an attempt to feign symptoms of psychosis. Mr. Morisette mentioned to jail mental health staff on multiple occasions that he needed documentation or information to support his belief that he was not competent to stand trial and sought to recruit their support in achieving this goal. His behavior in this regard, as well as his behavior as described in records related to episodes of aggression, housing manipulation, medication seeking, and attention seeking are all suggestive of logical, linear, goal-directed, and volitional behavior.

Mundt opined that there was insufficient evidence to suggest that, due to symptoms of mental illness, Morisette was unable to understand the proceedings or assist counsel. The court entered an order finding Morisette competent. He was sentenced on all four counts and now appeals.

Dkt. 14 at 16–25, Ex. 2.

B.    Procedural Background

1.    *Direct Appeal*

On June 11, 2021, the trial court sentenced Petitioner to total confinement of 300 months. Dkt. 14 at 5, Ex. 1. Represented by counsel, Petitioner raised four grounds for review in a challenge to his convictions and sentence on direct appeal. Dkt. 14, Ex. 3. Petitioner also filed a *pro se* direct appeal brief with two additional grounds for review. Dkt. 14, Ex. 6. The state court of appeals affirmed Petitioner's convictions on three counts, but reversed the conviction on a fourth count and remanded for sentencing. Dkt. 14, Ex. 2.

Petitioner sought discretionary review by the Washington Supreme Court ("state supreme court"). Dkt. 14, Ex. 7. On November 9, 2022, the state supreme court denied Petitioner's petition for review without comment. Dkt. 14, Ex. 8. The state court of appeals issued its mandate on December 9, 2022. Dkt. 14, Ex. 9.

1

2.      *Personal Restraint Petition*

2          On January 26, 2023, Petitioner filed a Personal Restraint Petition ("PRP") in the state

3   court of appeals.[1] *See* Dkt. 17-1, Ex. 31. The state court of appeals dismissed the PRP on May

4   11, 2023. Dkt. 17-1, Ex. 32. Petitioner did not seek discretionary review by the state supreme

5   court, and the certificate of finality was issued by the state court of appeals on July 3, 2023. Dkt.

6   17-1, Ex. 33.

7          3.      *Federal Petition*

8          On September 28, 2023, Petitioner filed the instant Petition raising four grounds for

9   relief. Dkts. 1, 8. On November 27, 2023, Respondent filed, and served on Petitioner, an Answer.

10  Dkt. 12. In the Answer, Respondent asserts that, regardless of whether Petitioner properly

11  exhausted his state court remedies, the Court should deny all four claims on the merits. *Id.*

12  Petitioner did not file a Traverse, which was due by December 18, 2023.

13         On January 25, 2024, the Court issued an Order directing Respondent to show cause why

14  this matter does not present as a "mixed petition"—a petition containing exhausted claims and

15  unexhausted claims which are not procedurally defaulted—and Petitioner should not be given the

16  option to select one of several procedural options available to him.[2] Dkt. 15. The parties have

17  filed supplemental briefs (*see* Dkts. 16, 18) and, thus, the Petition is ripe for consideration.

18

---

19  [1] In his Petition, Petitioner asserts he filed a PRP, not in the state court of appeals, but in the King County Superior
20  Court on May 11, 2023, setting forth one issue of "excessive time." Dkt. 8 at 6. He also asserts the PRP was
    dismissed on the same day it was filed, May 11, 2023. *Id*. The Court notes that, under Washington Rules of
    Appellate Procedure, a PRP should be filed in the state court of appeals. *See* Wash. R. App. P 16.5(a). Although the
21  Rules call for a PRP to be transferred by the court in which it is filed in certain conditions, *see id*. at 16.5(c),
    Petitioner does not assert his PRP was transferred. *See* Dkt. 8 at 6.

22  [2] In its Order on this issue, the Court directed that the supplemental briefing include information on how *Brown v.*
    *Maass*, 11 F.3d 914, 915 (9th Cir. 1993) should impact the Court's analysis of whether Petitioner had state court
23  remedies available to him when he filed his federal Petition. *See* Dkt. 15. In its Response to the Court's Order,
    Respondent provided further state court record on Petitioner's PRP and reiterated that the State has not waived the
24  procedural bar defense. Dkt. 16 at 6; Dkt. 17. As such, the Court need not address the *Brown* decision herein.

REPORT AND RECOMMENDATION - 8

## II.    DISCUSSION

After full briefing, Respondent maintains that: (1) Petitioner failed to properly exhaust Grounds 2, 3, and 4, and they are now procedurally barred; and (2) the state courts' adjudication of Ground 1 was not contrary to, or an unreasonable application of, clearly established federal law. Dkts, 12, 16. The Court will discuss exhaustion and procedural default as to Grounds 2, 3, and 4, before addressing the merits of exhausted Ground 1.

A.    Exhaustion for Grounds 2, 3 and 4

"[A] state prisoner must normally exhaust available state judicial remedies before a federal court will entertain his petition for habeas corpus." *Picard v. Connor*, 404 U.S. 270, 275 (1971). A petitioner's claims will be considered exhausted only after "the state courts [have been afforded] a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary." *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

A federal habeas petitioner must provide the state courts with a fair opportunity to correct alleged violations of federal rights. *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Middleton v. Cupp*, 768 F.2d 1083, 1086 (9th Cir. 1985) (petitioner "fairly presented" the claim to the state supreme court even though the state court did not reach the argument on the merits). It is not enough if all the facts necessary to support the federal claim were before the state courts or if a somewhat similar state law claim was made. *Duncan*, 513 U.S. at 365-66 (citing *Picard*, 404 U.S. at 275; *Anderson v. Harless*, 459 U.S. 4 (1982)). A petitioner must include reference to a specific federal constitutional guarantee, as well as a statement of the facts entitling the petitioner to relief. *Gray v. Netherland*, 518 U.S. 152, 162-163 (1996); *Insyxiengmay v. Morgan*, 403 F.3d

657, 668 (9th Cir. 2005). A petitioner bears the burden of proving he has exhausted available

state remedies, and retains the burden to prove all facts relevant to the exhaustion requirement.

*See Rose v. Lundy*, 455 U.S. 509, 520 (1982); 28 U.S.C. § 2254(b)(1)(A).

       1.    *Grounds Raised in State and Federal Proceedings*

       In his direct appeal, Petitioner's counsel raised the following claims to the state court of

appeals:

> 1. Where the evidence showed Morisette's competency deteriorated over the course of trial, did the trial court err in denying defense counsel's motion for a competency evaluation?
> 2. Where defense counsel failed to pursue a viable global defense that was supported by evidence in discovery and at trial, did Morisette receive ineffective assistance of counsel?
> 3. Where there was no evidence to support one of the charged means for count 4, did the general verdict fail to ensure jury unanimity and therefore violate due process?

Dkt. 14 at 44, Ex. 3. In a *pro se* direct appeal brief, Petitioner raised the following additional

grounds:

> 1. I'm schizophrenic, I have rights that were violated when I was on trial.
> 2. My competence is limited although I was in prison I was housed in the community and in mental health court.

Dkt. 14 at 176, Ex. 6.

       Following the state court of appeals' decision on direct appeal, Petitioner filed a petition

for discretionary review with the state supreme court raising the following grounds:

> 1. Whether the trial court violated Morisette's right not to be convicted while incompetent and failed to comply with its statutory duty under RCW 10.77.060 to appoint a mental health expert to evaluate Morisette's competency once the court had reason to doubt his competency, and defense counsel no longer had confidence in Morisette's ability to assist in his defense?
> 2. Whether Morisette received ineffective assistance of counsel where counsel failed to pursue a viable global defense that was supported by evidence in discovery and elicited at trial?
> 3. Whether this Court should accept review of these significant questions of law under state and federal constitutions? RAP 13.4(b)(3).

Dkt. 14 at 186–87, Ex. 7.

In his PRP, Petitioner raised one claim asserting his right to due process was violated due to the "excessive amount of time on sentence." Dkt. 17-1 at 4, Ex. 31. In support, Petitioner stated, "The court erred when they said 'Morisette's' outbursts were rational, I have a long mental health history." *Id*.

After the state court of appeals denied Petitioner's PRP, Petitioner did not seek discretionary review with the state supreme court. *See* Dkt. 17-1, Ex. 33.

In the instant Petition, Petitioner raises the following four grounds for relief:

1. Right to fair trial. I wasn't allowed to speak and when I attempted to, I was threatened by the Judge. I wasn't sent to an actual mental hospital to determine competency. I was declared competent despite my mental health history.
2. Right to testify. Because of the burden of proof and my manic behavior I wasn't allowed to testify.
3. I had the right to present my own defense. I asked for my infraction history to supplement our defense but my cell was searched and it was confiscated.
4. I do not currently have a lawyer assigned. I have the right to an attorney.

Dkt. 8 at 6–8.

2.    *Grounds 2 – 4*

Petitioner has not properly exhausted his state court remedies as to Grounds 2, 3, and 4 in the federal Petition because he did not fairly present these claims to the state courts. Specifically, Petitioner did not present these claims in his direct appeal or in his PRP. *See* Dkt. 14, Exs. 3, 6; Dkt. 17-1, Ex. 31. As Petitioner did not raise the allegations contained in Grounds 2 – 4 during his direct appeal or in his PRP, he did not give the state courts a full and fair opportunity to determine if a federal constitutional violation occurred. *See Ortberg v. Moody*, 961 F.2d 135, 138 (9th Cir. 1992) (finding claims were unexhausted when they were not raised on every level of direct review); *Casey v. Moore*, 386 F.3d 896, 916–18 (9th Cir. 2004) (finding claim was not fairly presented to the state court when the claim was raised for the first and only time upon petitioning

1    for discretionary review to the state supreme court); *O'Haver v. Ruiz*, No. 3:15-cv-05797-RBL-

2    JRC, 2016 WL 1019264, *4 (W.D. Wash. Feb. 11, 2016) ("A petitioner must properly raise a

3    habeas claim at every level of the state courts' review."). Thus, Grounds 2 – 4 were not properly

4    exhausted.

5    B.    <u>Procedural Default</u>

6          Procedural default is distinct from exhaustion in the habeas context. *Franklin v. Johnson*,

7    290 F.3d 1223, 1230 (9th Cir. 2002). The procedural default rule bars consideration of a federal

8    claim when it is clear the state court has been presented with the federal claim but declined to

9    reach the issue for procedural reasons or it is clear the state court would hold the claim

10   procedurally barred. *Id.* at 1230–31 (citations omitted). If a state procedural rule would now

11   preclude the petitioner from raising his claim at the state level, the claim is considered

12   "procedurally defaulted" and the federal courts are barred from reviewing the petition on the

13   merits. *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991); *O'Sullivan*, 526 U.S. at 845.

14         Grounds 2 – 4 raised in the Petition are procedurally defaulted because, if Petitioner

15   attempted to present these claims in a subsequent PRP, the state court would find the claims

16   barred by Washington State law. Washington State imposes a one-year statute of limitations on

17   filing a PRP or other post-conviction challenges. RCW 10.73.090. The state court of appeals

18   issued a mandate finalizing Petitioner's direct appeal on December 9, 2022. Dkt. 14, Ex. 9. Thus,

19   the time to file a petition or motion for post-conviction relief expired in December 2023, one

20   year after Petitioner's direct appeal became final. *See* RCW 10.73.090(1), (3)(b). As the one-year

21   statute of limitations has passed, Petitioner is barred from filing a subsequent PRP. *See id*. at (1);

22   *see also Shumway v. Payne*, 223 F.3d 982, 988 n.22 (9th Cir. 2000) (RCW 10.73.090 has been

23

24

found by the Ninth Circuit to be an independent and adequate state law barring federal habeas review).

Further, under Washington State law, the state court of appeals will not consider a second or successive PRP unless the petitioner certifies he has not filed a previous petition on similar grounds and shows good cause as to why he did not raise the grounds in the previous PRP. *See* RCW 10.73.140. Petitioner has not presented facts which could show good cause for his failure to raise Grounds 2 – 4 at each level of his PRP. Therefore, these grounds raised in the Petition are also subject to an implied procedural bar because the grounds would be "prohibited by an independent, adequate, and mandatory rule of state procedure, RCW 10.73.140, making a return to state court futile." *See Bolar v. Luna*, No. 2:05-cv-02029-TSZ-JPD, 2007 WL 1103933, at *11 (W.D. Wash. April 10, 2007).

C.    <u>Overcoming Procedural Default</u>

The procedural default will be excused and a petitioner will be entitled to federal habeas corpus review if he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice[.]" *Boyd v. Thompson*, 147 F.3d 1124, 1126 (9th Cir. 1998) (citing *Coleman*, 501 U.S. at 750)); *see also Shinn v. Ramirez*, 596 U.S. 366, 379 (2022) ("Out of respect for finality, comity, and the orderly administration of justice, . . . federal courts may excuse procedural default only if a prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law.") (internal quotations and citations omitted). To establish "cause," a petitioner must show some objective factor external to the defense prevented him from complying with the state's procedural rule. *Coleman*, 501 U.S. at 753 (citing *Murray v. Carrier,* 477 U.S. 478, 488 (1986)). To show "prejudice," a petitioner "must shoulder the burden of showing, not merely that the errors at his trial created a *possibility*

of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original); *see also Shinn*, 596 U.S. at 379–80 (citations omitted).

Only in an "extraordinary case" may the habeas court grant the writ without a showing of cause and prejudice to correct a "fundamental miscarriage of justice" where a constitutional violation has resulted in the conviction of a defendant who is actually innocent. *Murray,* 477 U.S. at 495–96. To demonstrate he suffered a fundamental miscarriage of justice, viewing all the evidence in light of new reliable evidence, the petitioner must show "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537 (2006) (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

Here, Petitioner has failed to establish cause and prejudice to overcome the default. *See* Dkt. 18 at 6–7. Petitioner fails to show some objective factor external to his defense prevented him from complying with the State's procedural bar rule. Petitioner also fails to show any alleged trial errors worked to his actual and substantial disadvantage, infecting his entire trial with errors of constitutional dimensions, and thus has not shown prejudice. Furthermore, Petitioner has not provided new, reliable evidence showing he is actually innocent, and, therefore, this is not the kind of extraordinary instance where this Court should review the claim despite the absence of a showing of cause.

Petitioner failed to show cause or prejudice to excuse his procedural default; therefore, the Court is barred from reviewing Grounds 2 – 4 on the merits. Accordingly, the undersigned finds Petitioner is not entitled to relief as to Grounds 2 – 4 and recommends these Grounds be dismissed. *See Casey v. Moore*, 386 F.3d 896 (9th Cir. 2004).

//

D.    <u>Merits Review (Ground 1)</u>

Respondent maintains the state courts' adjudication of Ground 1 was not contrary to, or an unreasonable application of, clearly established federal law. Dkt. 12 at 14–17.

    1.    *Standard of Review*

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may not grant habeas relief on the basis of a claim adjudicated on the merits in state court unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). In interpreting this portion of the federal habeas rules, the Supreme Court has ruled a state decision is "contrary to" clearly established Supreme Court precedent if the state court either (1) arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or (2) confronts facts "materially indistinguishable" from relevant Supreme Court precedent and arrives at an opposite result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Moreover, under § 2254(d)(1), "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411; *see Lockyer v. Andrade*, 538 U.S. 63, 69 (2003). An unreasonable application of Supreme Court precedent occurs "if the state court identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407. In addition, a state court decision involves an unreasonable application of Supreme Court precedent "'if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context

where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (quoting *Williams*, 529 U.S. at 407).

With respect to § 2254(d)(2), a petitioner may only obtain relief by showing that the state court's conclusion was based on "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting 28 U.S.C. § 2254(d)(2)); *see also Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceedings."). The Court presumes the state court's factual findings to be sound unless the petitioner rebuts "the presumption of correctness by clear and convincing evidence." *Dretke*, 545 U.S. at 240 (quoting 28 U.S.C. § 2254(e)(1)).

2.    *Competency to Stand Trial (Ground 1)*

In Ground 1 of the Petition, Petitioner alleges the trial court violated his constitutional rights when it failed to find him incompetent to stand trial. Dkt. 8 at 6–7. More specifically, Petitioner contends that he was "declared competent despite my mental health history." *Id*. at 7. In the Answer, Respondent maintains the state court's adjudication of this Ground was not contrary to, or an unreasonable application of, clearly established federal law, or that the decision did not rest upon an unreasonable determination of the facts in light of the evidence before the state court. Dkt. 12 at 14–17.

It is well established that a criminal defendant cannot be tried unless he is competent. *Moran v. Godinez*, 509 U.S. 389, 396 (1993) (citing *Pate v. Robinson*, 383 U.S. 375, 378 (1966)). The Supreme Court has held that the standard for determining competence to stand trial

1    is "whether the defendant has 'sufficient present ability to consult with his lawyer with a

2    reasonable degree of rational understanding' and has 'a rational as well as factual understanding

3    of the proceedings against him.'" *Godinez*, 509 U.S. at 396 (quoting *Dusky v. United States*, 362

4    U.S. 402 (1960)). If a defendant is incompetent, due process requires suspension of the criminal

5    trial until such time as his competency is restored. *Medina v. California*, 505 U.S. 437, 448

6    (1992).

7            The Supreme Court has made clear that a state's "failure to observe procedures adequate

8    to protect a defendant's right not to be tried or convicted while incompetent to stand trial

9    deprives him of his due process right to a fair trial." *Drope v. Mississippi*, 420 U.S. 162, 172

10   (1975). A state trial judge must conduct a competency hearing whenever the evidence before him

11   raises a *bona fide* doubt about the defendant's competence to stand trial. *Williams v. Woodford*,

12   384 F.3d 567, 603–04 (9th Cir. 2004); *Odle v. Woodford*, 238 F.3d 1084, 1087 (9th Cir. 2001).

13   In determining whether there is a *bona fide* or substantial doubt regarding competency, a trial

14   court must "evaluate all of the evidence," and a reviewing court must consider "whether a

15   reasonable judge . . . should have experienced doubt with respect to competency to stand trial."

16   *de Kaplany v. Enomoto*, 540 F.2d 975, 983 (9th Cir. 1976).

17           A state court's finding that the evidence before the trial court did not require a

18   competency hearing is a finding of fact which is entitled to a presumption of correctness. *Torres*

19   *v. Prunty*, 223 F.3d 1103, 1105 (9th Cir. 2000) (citing *Maggio v. Fulford*, 462 U.S. 111, 117

20   (1983)). On federal habeas review, the burden is on the petitioner to rebut this presumption of

21   correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

22           Here, prior to trial, in August 2020, the trial court did address the Petitioner's

23   competency by ordering an evaluation of Petitioner's competency to stand trial. *See* Dkt. 14, Ex.

24

REPORT AND RECOMMENDATION - 17

10. Psychologist Cynthia Mundt, Ph.D., conducted an evaluation and submitted a report, concluding that Petitioner "meets diagnostic criteria for Malingering, Unspecified Schizophrenia Spectrum and Other Psychotic Disorder, by history, Other Substance Use Disorder (methamphetamine, Ecstasy), by history, and Rule-Out Unspecified Personality Disorder, with mixed traits, by history." Dkt. 14 at 245, Ex. 11. On competency, Dr. Mundt found, "There is currently insufficient evidence available to suggest that, due to symptoms of a mental illness, Mr. Morisette lacks the capacity to understand the nature of the proceedings against him or lacks the capacity to assist in his own defense." *Id*. After reviewing the report, the trial court found Petitioner competent to stand trial. Dkt. 14, Ex. 12. The trial court found as fact that Petitioner "understands the nature of the criminal proceedings against him[ ] and . . . is able to effectively assist counsel in the defense of his[ ] case." *Id*. at 266.

After trial, in May 2021, the trial court again addressed the Petitioner's competency by ordered a ***second*** evaluation of Petitioner's competency. Dkt. 14, Ex. 13. Dr. Mundt evaluated Petitioner again and came to the same conclusions regarding Petitioner's diagnosis or current mental status and his competency. Dkt. 14, Ex. 14. Specifically, Dr. Mundt concluded Petitioner was malingering, and that "[t]here is currently insufficient evidence available to suggest that, due to symptoms of mental illness, Mr. Morisette lacks the capacity to understand the nature of the proceedings against him or lacks the capacity to assist in his own defense." *Id*. at 277. After reviewing the report, the trial court found Petitioner competent to proceed, finding as fact "that there has not been a showing by a preponderance of the evidence that the defendant lacks the capacity to understand the nature of the proceedings against him . . . or to assist in his . . . own defense as a result of a mental disease or defect." Dkt. 14 at 291–92, Ex. 15.

On direct appeal the state court of appeals rejected Petitioner's claim that the trial court erred in failing to order a third competency evaluation. Dkt. 14, Ex. 2. The court explained its conclusion as follows:

> Morisette contends that the court should have ordered a competency evaluation during trial. [footnote omitted] We disagree.
>
> The due process clause of the Fourteenth Amendment to the United States Constitution guarantees an accused the fundamental right not to stand trial if he is legally incompetent. *State v. Ortiz-Abrego*, 187 Wn.2d 394, 402-03, 387 P.3d 638 (2017). Further, under Washington law, "No incompetent person shall be tried, convicted, or sentenced for the commission of an offense so long as such incapacity continues." RCW 10.77.050. A defendant is incompetent when he or she "lacks the capacity to understand the nature of the proceedings against him or her or to assist in his or her own defense as a result of mental disease or defect." RCW 10.77.010(16).
>
> A defendant suffering delusions does not necessarily prevent him from being competent to understand the proceedings and assist with his defense. *See State v. Benn*, 120 Wn.2d 631, 661-62, 845 P.2d 289 (1993); *see also State v. Hahn*, 106 Wn.2d 885, 887-88, 726 P.2d 25 (1986). A defendant who has the ability to assist with his defense does not mean he must be able to suggest or choose trial strategy. *Benn*, 120 Wn.2d at 662; *State v. Ortiz*, 104 Wn.2d 479, 483, 706 P.2d 1069 (1985).
>
> RCW 10.77.060 provides that if a court finds there is reason to doubt a defendant's competency, the court must have the defendant evaluated by a qualified professional who will report on the defendant's mental condition. RCW 10.77.060(1)(a). The trial court's determination of competence is a matter within its discretion, reversible only upon a showing of abuse of discretion. *Ortiz*, 104 Wn.2d at 482. An abuse of discretion occurs only when no reasonable judge would have reached the same conclusion. *State v. Hager*, 171 Wn.2d 151, 156, 248 P.3d 512 (2011).
>
> After a competency determination is made, the court need not revisit competency unless new information presented alters the status quo ante. *State v. Ortiz*, 119 Wn.2d 294, 301, 831 P.2d 1060 (1992). The factors a trial judge may consider in deciding whether or not to order a competency evaluation include the "defendant's appearance, demeanor, conduct, personal and family history, past behavior, medical and psychiatric reports and the statements of counsel." *In re Fleming*, 142 Wn.2d 853, 863, 16 P.3d 610 (2001) (quoting *State v. Dodd*, 70 Wn.2d 513, 514, 424 P.2d 302 (1967)).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

       Morisette argues that based on his nonsensical outburst about being in a movie, he was no longer capable of making necessary decisions at trial, such as whether he would be present and able to testify. However, at trial, defense counsel only made a motion to establish competency out of an "abundance of caution" based on Morisette's behavior on April 6 and 7. The court was aware of the previous competency report indicating that the diagnostic impression was malingering. Also, indications of delusions do not necessarily prevent someone from being competent to understand the proceedings and assist with his defense. And disruptive behavior does not necessarily give rise to a doubt as to whether someone understands the proceedings and can assist in a defense. As the trial court noted, with the exception to his reference to a movie, Morisette's outbursts were in relation to what was happening in court. After the court would threaten him with being gagged or removed, he responded by either complying, or in the last instance telling the court that he wanted to be removed. These responses did not necessarily create a doubt as to competency.

       Additionally, after defense counsel made his motion for a competency evaluation, he spoke with Morisette regarding whether he waived his right to be present in the courtroom. Defense counsel relayed to the court that Morisette had knowingly, intelligently, and voluntarily waived his right, therefore indicating he was competent at the exact time that counsel had made a motion for a competency evaluation. Defense counsel again represented to the court at the taking of the verdict that Morisette waived his presence voluntarily and intelligently.

       Finally, the competency evaluation conducted after trial considered Morisette's behavior during trial both in the courtroom on April 7 and his behavior in the jail between September 26, 2020 and April 28, 2021. The evaluator, Mundt, again found Morisette to be malingering and that "[t]here is no indication in records of any decreases in his functional capacities at any time during the last eight months or in recent history."

       The court did not abuse its discretion when it did not order a competency evaluation during trial. It had no reason to believe that circumstances had changed from the first competency report that attributed the conduct to malingering.

Dkt. 14 at 25–28, Ex. 2.

      Petitioner has failed to rebut the presumption of correctness attached to the state court of appeals' conclusion that the evidence before the trial court did not require a competency hearing. Petitioner did not file a Traverse, but in his Response to the Court's Order to Show Cause, he seems to suggest that his behavior during trial should have caused the trial court to further inquire into his mental health history and to order a competency hearing. *See* Dkt. 18 at 5.

REPORT AND RECOMMENDATION - 20

Petitioner asserts, "[t]here was such a mixed opinion about the petitioner's mental health status. Where the court disagreed that I should have had a mental health evaluation during trial, one was ordered. Where the court on good merits declared that despite petitioner's outbursts and smearing feces that this was done to manipulate housing this petitioner disagrees. Compliance with medication does not necessarily [show] competence." *Id*. However, when these statements are viewed in the context of the proceedings as a whole, it cannot reasonably be concluded that Petitioner's behaviors during trial, either individually or cumulatively, should have given rise to concerns regarding Petitioner's competence. Petitioner's conclusory allegations and citations to evidence the trial court previously considered in its factual determination on Petitioner's competence does not rebut with clear and convincing evidence the trial court's decision on competence.

Based on the foregoing, the state court of appeals reasonably concluded that the evidence was insufficient to raise a *bona fide* doubt as to Petitioner's competency thereby requiring a third evaluation. Thus, the Court recommends that Ground 1 be denied.

### III.    EVIDENTIARY HEARING

The decision to hold an evidentiary hearing is committed to the Court's discretion. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Id.* at 474. In determining whether relief is available under 28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before the state court. *Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011). A hearing is not required if the allegations would not entitle Petitioner to relief under § 2254(d). *Landrigan*, 550 U.S. at 474. "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas

relief, a district court is not required to hold an evidentiary hearing." *Id*. Further, the Supreme Court in *Shinn* held that when reviewing a federal habeas petition under 28 U.S.C. § 2254, the federal court may not consider any facts beyond the factual record presented to the state post-conviction relief court – unless one of the limited exceptions of 28 U.S.C. § 2254(e)(2) applies. *Shinn v. Ramirez*, 596 U.S. 366, 382 (2022).

The Court finds it is not necessary to hold an evidentiary hearing in this case because, as discussed in this Report and Recommendation, Petitioner's grounds may be resolved on the existing state court record.

## IV.    CERTIFICATE OF APPEALABILITY

A petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district court's dismissal of the federal habeas petition only after obtaining a certificate of appealability from a district or circuit judge. *See* 28 U.S.C. § 2253(c). "A certificate of appealability may issue . . . only if the [petitioner] has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

No jurist of reason could disagree with this Court's evaluation of Petitioner's claims or would conclude the issues presented in the Petition should proceed further. Therefore, the Court concludes Petitioner is not entitled to a certificate of appealability with respect to the Petition.

## V.    CONCLUSION

For the above stated reasons, the Court concludes Petitioner's Grounds 2, 3, and 4 are procedurally barred. Further, Petitioner has not shown the state courts' adjudication of Ground 1

raised in the Petition was contrary to, or an unreasonable application of, clearly established federal law, or that the decision was based on an unreasonable determination of the facts in light of the evidence before the state court. Additionally, an evidentiary hearing is not necessary. Therefore, the Court recommends the Petition be **DENIED** and a certificate of appealability not be issued.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), the parties shall have fourteen (14) days from service of this report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on April 12, 2024, as noted in the caption.

Dated this 26th day of March, 2024.

Grady J. Leupold
United States Magistrate Judge